**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| M.K.O.,<br><br>Plaintiff,<br><br>v.<br><br>SETON HALL UNIVERSITY,<br><br>Defendant. | Civil Action No.: 2:26-cv-09341<br><br>Hon. Susan D. Wigenton, U.S.D.J.<br>Hon. James B. Clark, U.S.M.J.<br><br>**MOTION DATE**: November 2, 2026<br><br>**ORAL ARGUMENT REQUESTED**<br><br>DOCUMENT ELECTRONICALLY FILED |

# DEFENDANT SETON HALL UNIVERSITY'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

**ARCHER & GREINER, P.C.**
**Patrick Papalia, Esq. (ID 015831993)**
ppapalia@archerlaw.com
**Ryan Paff, Esq. (ID 421962023)**
rpaff@archerlaw.com
Court Plaza South – West Wing
21 Main Street, Suite 353
Hackensack, New Jersey 07601
201-342-6000
*Attorneys for Defendant, Seton Hall University*

# TABLE OF CONTENTS

Page


**TABLE OF AUTHORITIES** .......... ii

**PRELIMINARY STATEMENT** .......... 1

**PROCEDURAL HISTORY** .......... 3

**STANDARD OF REVIEW** .......... 3

**LEGAL ARGUMENT** .......... 6

**I. PlAINTIFF'S CLAIMS ARE ALL BARRED BY THE STATUTE OF LIMITATIONS WARRANTING DISMISSAL AS A MATTER OF LAW** .......... 6

**A. The Complaint was Filed More than Six Years After the Alleged Breach** .......... 7

**B. Neither the Discovery Rule Nor Equitable Estoppel can Toll the Statute of Limitations** .......... 8

**II. THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO SET FORTH ANY PLAUSIBLE CLAIMS.** .......... 13

**A. The Complaint Fails to State a Claim for Breach of Contract (Count I)** .......... 13

**B. The Complaint Fails to State a Claim for Promissory Estoppel (Count II)** .......... 25

**C. The Complaint Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count III)** .......... 34

**D. The Complaint Fails to State a Claim for Unjust Enrichment (Count IV)** .......... 37

**CONCLUSION** .......... 40

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Vorchheimer v. Philadelphian Owners Ass'n*,
903 F.3d 100 (3d Cir. 2018) ....................5

*Acevedo v. Monsignor Donovan High School*,
420 F. Supp. 2d 337 (D.N.J. 2006) ....................5

*Aircraft Inv. Corp. v. Falcon Jet Corp.*,
18 F. Supp. 2d 409 (D.N.J. 1998) ....................29

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................3, 4

*Baer v. Chase*,
392 F.3d 609 (3d Cir. 2004) ....................7, 9

*Baraka v. McGreevey*,
481 F.3d 187 (3d Cir. 2007) ....................4

*Beaman v. Bank of Am.*,
No. 21-2056, 2023 WL 4784254 (D.N.J. July 27, 2023) ....................36

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ....................4

*Blystra v. Fiber Tech Grp., Inc.*,
407 F. Supp. 2d 636 (D.N.J. 2005) ....................7

*Conley v. Gibson*,
355 U.S. 41 (1957) ....................4

*Connelly v. Lane Constr. Corp.*,
809 F.3d 780 (3d Cir. 2016) ....................4

*County of Essex v. Aetna Inc.*,
No. 17-13663, 2018 WL 6584920 (D.N.J. Dec. 13, 2018) .................................26

*Cryopak Inc. v. Freshly LLC*,
No. 23-18896, 2024 WL 4986818 (D.N.J. Dec. 5, 2024) ..................................33

*Del Sontro v. Cendant Corp., Inc.*,
223 F. Supp. 2d 563 (D.N.J. 2002)............................................................ 16, 27

*Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd.*,
213 F.3d 175 (4th Cir. 2000) .......................................................................36

*Eggiman v. Bank of America, N.A.*,
No. 22-10298, 2023 WL 2647071 (D. Mass. Mar. 27, 2023).............................36

*Gap Props., LLC v. Cairo*,
No. 19-20117, 2020 WL 7183509 (D.N.J. Sept. 17, 2020) ................................36

*Hillsborough Rare Coins, LLC v. ADT LLC*,
No. 16-916, 2017 WL 1731695 (D.N.J. May 2, 2017) ......................................26

*Hishon v. King & Spalding*,
467 U.S. 69 (1984) ..........................................................................................4

*In re Phillips Petroleum Sec. Litig.*,
881 F.2d 1236 (3d Cir. 1989) .......................................................................30

*Kant v. Seton Hall Univ.*,
No. 00-5204, 2009 WL 872226 (D.N.J. Mar. 30, 2009), *aff'd*, 422 F. App'x 186 (3d Cir. 2011) ...................................................................................................9

*Kornea v. Rushmore Servicing, LLC*,
No. 25-4743, 2026 WL 1453011 (E.D. Pa. May 21, 2026) ..................................6

*Kostic v. Seton Hall Univ.*,
No. 20-5566, 2021 WL 9667962 (D.N.J. May 27, 2021) ............................ 18, 39

*MZL Cap. Holdings, Inc v. TD Bank, N.A.*,
734 F. App'x 101 (3d Cir. 2018)....................................................................35

*Nix v. Option One Mortg. Corp.*,
No. 05-3685, 2006 WL 166451 (D.N.J. Jan. 19, 2006) ........................................9

*Peck v. Donovan*,
565 F. App'x 66 (3d Cir. 2012)..........................................................................7

*Peck v. Donovan*,
No. 07-5500, 2009 WL 900068 (D.N.J. Mar. 31, 2009) .......................................7

*Peñalbert-Rosa v. Fortuño-Burset*,
631 F.3d 592 (1st Cir. 2011) ...............................................................................4

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
998 F.2d 1192 (3d Cir. 1993) ........................................................................ 5, 11

*Ribble Co. v. Burkert Fluid Control Sys.*,
No. 15-6173, 2016 WL 6886869 (D.N.J. Nov. 22, 2016)...................................38

*Ross v. Celtron Int'l, Inc.*,
494 F. Supp. 2d 288 (D.N.J. 2007)....................................................................27

*Sands v. McCormick*,
502 F.3d 263 (3d Cir. 2007) ..............................................................................11

*Santiago v. Warminster Twp.*,
629 F.3d 121 (3d Cir. 2010) ...............................................................................4

*Santoni v. Fed. Deposit Ins. Corp.*,
677 F.2d 174 (1st Cir. 1982) ..............................................................................30

*Scagnelli v. Schiavone*,
538 F. App'x 192 (3d Cir. 2013) .......................................................................27

*Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*,
113 F.3d 405 (3d Cir. 1997) ............................................................................4, 5

*Slimm v. Bank of Am. Corp.*,
No. 12-5846, 2013 WL 1867035 (D.N.J. May 2, 2013) .....................................38

*States v. Midgley*,
142 F.3d 174 (3d Cir. 1998) ....................................................................11

*Watson v. City of Salem*,
934 F. Supp. 643 (D.N.J. 1995)..................................................... 21, 29

*Wolet Cap. Corp. v. Walmart Inc.*,
No. 18-12380, 2021 WL 242297 (S.D.N.Y. Jan. 25, 2021)................................33

*Zynn v. O'Donnell*,
688 F.2d 940 (3d Cir. 1982) ......................................................................4

**State Cases**

*Broad St. Nat. Bank of Trenton v. Collier*,
169 A. 552 (N.J. 1933) ..........................................................................20

*Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*,
864 A.2d 387 (N.J. 2005) ......................................................................35

*C. B. Snyder Realty Co. v. Nat'l Newark & Essex Banking Co. of Newark*,
101 A.2d 544 (N.J. 1953) ......................................................................26

*Checchio v. Evermore Fitness, LLC*,
271 A.3d 829 (N.J. Super. Ct. App. Div. 2022)..............................................22

*Cioffi v. City of Jersey City*,
No. A-0660-10, 2011 WL 4916375 (N.J. Super. Ct. App. Div. Oct. 18, 2011)......7

*Cohn v. Fisher*,
287 A.2d 222 (N.J. Super. Ct. App. Div. 1972) ..............................................15

*Comly v. First Camden Nat'l Bank & Trust Co.*,
36 A.2d 591 (N.J. Sup. Ct. 1944) ..............................................................15

*County of Morris v. Fauver*,
707 A.2d 958 (N.J. 1998) ........................................................................9

*Curtis Elevator Co. v. Hampshire House, Inc.*,
362 A.2d 73 (N.J. Super. Ct. Law Div. 1976) .......... 16

*D'Agostino v. Maldonado*,
78 A.3d 527 (N.J. 2013) .......... 24

*EnviroFinance Grp., LLC v. Envt'l Barrier Co., LLC*,
113 A.3d 775 (N.J. Super. Ct. App. Div. 2015) .......... 14

*Freeman v. State*,
788 A.2d 867 (N.J. Super. Ct. App. Div. 2002) .......... 8, 11, 12

*Globe Motor Co. v. Igdalev*,
139 A.3d 57 (N.J. 2016) .......... 14, 15

*Goldfarb v. Solimine*,
245 A.3d 570 (N.J. 2021) .......... *passim*

*Johnson & Johnson v. Charmley Drug Co.*,
95 A.2d 391 (N.J. 1953) .......... 19

*Kyle v. Green Acres at Verona, Inc.*,
207 A.2d 513 (N.J. 1965) .......... 12

*Lopez v. Swyer*,
300 A.2d 563 (N.J. 1973) .......... 8

*Metromedia Co. v. Hartz Mountain Assocs.*,
655 A.2d 1379 (N.J. 1995) .......... 7

*Mittra v. Univ. of Med. & Dentistry of New Jersey*,
719 A.2d 693 (N.J. Super. Ct. App. Div. 1998) .......... 18

*Murphy v. Implicito*,
920 A.2d 678 (N.J. Super. Ct. App. Div. 2007) .......... 14

*Napolitano v. Trs. of Princeton Univ.*,
453 A.2d 263 (N.J. Super. Ct. App. Div. 1982) .......... 18

*New Jersey Lawyers' Fund for Client Prot. v. Stewart Title Guar. Co.*,
1 A.3d 632 (N.J. 2010) ....................22

*Noye v. Hoffmann-La Roche Inc.*,
570 A.2d 12 (N.J. Super. Ct. App. Div. 1990) ....................35

*Passaic Valley Sewerage Comm'rs v. St. Paul Fire & Marine Ins. Co.*,
21 A.3d 1151 (N.J. 2011) ....................34

*Pollack v. Quick Quality Rests., Inc.*,
172 A.3d 568 (N.J. Super. Ct. App. Div. 2017) ....................15

*Romeo v. Seton Hall Univ.*,
875 A.2d 1043 (N.J. Super. Ct. App. Div. 2005) ....................18

*Schwartz v. Menas*,
279 A.23d 436 (N.J. 2022) ....................34

*Shelton v. Restaurant.com, Inc.*,
70 A.3d 544 (N.J. 2013) ....................15

*Sipko v. Koger, Inc.*,
70 A.3d 512 (N.J. 2013) ....................20

*Sodora v. Sodora*,
768 A.2d 840 (N.J. Super. Ct. Ch. Div. 2000) ....................7

*Sons of Thunder v. Borden, Inc.*,
690 A.2d 575 (N.J. 1996) ....................35

*Stark v. Maraventano*,
No. A-4801-18, 2021 WL 4898501 (N.J. Super. Ct. App. Div. Oct. 21, 2021) .....6

*Sun Life Assurance Co. of CanABA v. Wells Fargo Bank, N.A.*,
208 A.3d 839 (N.J. 2019) ....................24

*Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington*,
944 A.2d 1 (N.J. 2008) .................... 26, 29, 32

*Vasquez v. Glassboro Serv. Ass''n, Inc.*,
415 A.2d 1156 (N.J. 1980) ....................................24

*Villabos v. Fava*,
775 A.2d 700 (N.J. Super. Ct. App. Div. 2001) ....................................11

*VRG Corp. v. GKN Realty Corp.*,
641 A.2d 519 (N.J. 1994) ....................................38

*Wade v. Kessler Inst.*,
798 A.2d 1251 (N.J. 2002) .................................... 35, 36

*Weed v. Sky NJ, LLC*,
No. A-4589-16, 2018 WL 1004206 (N.J. Super. Ct. App. Div. Feb. 22, 2018)..22

*Weichert Co. Realtors v. Ryan*,
608 A.2d 280 (N.J. 1992) ....................................19

**Statutes**

N.J. Stat. Ann. § 2A:14-1 ....................................6, 7
N.J. Stat. Ann. § 2C:24-4(a)(2) .................................... 28, 31

**Other Authorities**

ABA *Standards and Rules of Procedure for Approval of Law Schools*, std. 311(b) (2014-2015) .................................... 24, 25
Model Jury Charge (Civil), § 4.10A "The Contract Claim -- Generally (May 1998) ....................................14

**Rules**

Federal Rule of Civil Procedure 12(d ....................................5
Federal Rule of Civil Procedure 10(c) ....................................5
Federal Rule of Civil Procedure 12(b)(6) .................................... *passim*

## PRELIMINARY STATEMENT

Defendant, Seton Hall University ("Seton Hall"), submits this brief in support of its Motion to Dismiss the late Complaint filed on July 23, 2026 ("Complaint")[1] by Plaintiff, M.K.O. ("Plaintiff" or "Orgera"), for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6) (hereinafter, the "Motion"). Plaintiff, Michael K. Orgera, is a former law student at Seton Hall's School of Law ("Law School") and convicted felon. While attending the Law School in 2017, Orgera was arrested for allegedly abusing minor family members and, thereafter, was convicted and served more than three (3) years in prison. After his release from prison, Orgera, in accordance with the American Bar Association's "stale-credit" rule, was not readmitted to the Law School to compete the Juris Doctor program and has filed this lawsuit against Seton Hall in response.

In the Complaint, Orgera asserts that, before his conviction, the Law School's then-Associate Dean for Academics ("Associate Dean") promised Orgera's mother that Orgera could return to Seton Hall depending on either the charges against Orgera being dropped or Orgera's exoneration (neither of which occurred). Orgera also falsely claims that Seton Hall stated that it would disregard the ABA's (its accreditor), mandated "stale-credit" rule, risking its accreditation, for Orgera.

---

1 A copy of the Complaint and Demand for Jury Trial, filed by Orgera on July 23, 2026, is attached as Exhibit A to the Certification of Patrick Papalia, Esq. ("Papalia Cert.") and will hereinafter be cited to as "Compl.".

As demonstrated herein, Orgera's baseless claims require dismissal as a matter of law. First, each of the causes of action are time-barred by the six-year statute of limitations. Here, Orgera filed his untimely Complaint more than a year after the statute of limitations expired on each of his causes of action. The Complaint also fails to allege any circumstances permitting the Court's application of either the discovery rule or equitable tolling doctrine. Instead, it is clear that Orgera failed to exercise reasonable diligence during his three years of incarceration, despite having access to mail, law libraries (and his own lawyer through which he was filing other motions and legal filings), learned that he was withdrawn), learned, through his counsel, that he was withdrawn in 2019, but still sat on his rights for approximately five and a half years **after** his release from prison before instituting this lawsuit; Orgera simply was not precluded from filing this action within the statute of limitations.

Second, even if the Court were to conclude that Orgera's claims are timely, the Complaint still warrants dismissal because it fails to set forth any plausible causes of action. Orgera relies upon conditional and indefinite statements, allegedly made by the former Associate Dean, which were dependent on future circumstances that never occurred as Orgera was ultimately convicted and incarcerated. Such communications are insufficient to support Orgera's claims for breach of contract (Count I), promissory estoppel (Count II), or breach of the implied covenant of good

faith and fair dealing (Count III). Likewise, Orgera's allegations do not support a cognizable unjust enrichment claim (Count IV) because Orgera admits that he received academic credits in exchange for his tuition payments.

For these reasons and as established in further detail below, the Complaint against Seton Hall must be dismissed with prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## PROCEDURAL HISTORY

On July 23, 2026, Orgera filed the Complaint in the United States District Court for the District of New Jersey. (ECF No. 1). On August 14, 2026, the Court dismissed the Complaint without prejudice for Orgera's failure to pay the required filing fee or submit an application to proceed in forma pauperis. (ECF No. 7). Thereafter, Orgera paid the filing fee, and the action was reinstated. On August 25, 2026, Seton Hall was served with the Summons and Complaint. On August 31, 2026, Seton Hall filed an application for an extension of time to respond to the Complaint, which was granted on September 1, 2026. (ECF No. 9). Seton Hall now makes this Motion to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## STANDARD OF REVIEW

To avoid dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). The Court thus "disregard[s] legal conclusions and 'recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). "Perhaps 'some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual,' but the clearest indication that an allegation is conclusory and unworthy of weight in analyzing the sufficiency of a complaint is that it embodies a legal point." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789-90 (3d Cir. 2016) (quoting *Peñalbert-Rosa v. Fortuño-Burse*t, 631 F.3d 592, 595 (1st Cir. 2011)).

Courts are not required to accept "'unsupported conclusions and unwarranted inferences[.]'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (affirming dismissal) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)). If it appears beyond a doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss the complaint for failure to state a claim. *Hishon v. King & Spalding*,

467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Zynn v. O'Donnell*, 688 F.2d 940, 941 (3d Cir. 1982).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Indeed, Federal Rule of Civil Procedure 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." Consideration of exhibits a plaintiff attaches to their complaint does not convert the motion to dismiss to a summary judgment motion. *Pension Ben. Guar.*, 998 F.2d at 1196-98; *Acevedo v. Monsignor Donovan High School*, 420 F. Supp. 2d 337, 340 (D.N.J. 2006) (noting that while "matters extraneous to the pleadings" generally cannot be considered on a motion to dismiss without conversion to a summary judgment, an exception exists where the plaintiff attaches exhibits to the complaint).

For example, in *Vorchheimer v. Philadelphian Owners Association*, the court appropriately considered doctors' letters and correspondence that the plaintiff attached to her complaint in evaluating a motion to dismiss without converting it to a summary judgment since review of those exhibits did not "require going 'outside the pleadings.'" 903 F.3d 100, 111-12 (3d Cir. 2018) (quoting Fed. R. Civ. P. 12(d)). Importantly, the court determined that "*if [plaintiff's] own exhibits contradict her*

*allegations in the complaint, the exhibits control*." *Id.* at 112 (emphasis added); *see also Schuylkill Energy Res., Inc.*, 113 F.3d at 417 (on a motion to dismiss, rejecting factual "assertions [that were] belied by both the remaining factual allegations and the law."); *Kornea v. Rushmore Servicing, LLC*, No. 25-4743, 2026 WL 1453011, at *1 n.1 (E.D. Pa. May 21, 2026) ("The Court will also consider the exhibits attached to the [complaint] and, in instances where an exhibit is inconsistent with the allegations in the [complaint], the Court will credit the contents of the exhibit.").

As demonstrated below, Orgera's Complaint fails to state a plausible claim against Seton Hall and, as a result, should be dismissed in its entirety with prejudice.

## LEGAL ARGUMENT

### I. PLAINTIFF'S CLAIMS ARE ALL BARRED BY THE STATUTE OF LIMITATIONS WARRANTING DISMISSAL AS A MATTER OF LAW

At the outset, the Complaint must be dismissed in its entirety because each of Orgera's claims are time-barred. The Complaint raises four causes of action: (i) breach of contract (Count I), (ii) promissory estoppel (Count II), (iii) breach of the implied covenant of good faith and fair dealing (Count III), and (iv) unjust enrichment (Count IV). (*See generally* Compl.). Section 2A:14-1 of the New Jersey Statutes Annotated sets a six-year period for "recovery upon a contractual claim or liability, express or implied." *Id.* That six-year period governs an express breach-of-contract count, along with quasi-contract claims, including breach of the implied covenant of good faith and fair dealing, promissory estoppel and unjust enrichment.

*Stark v. Maraventano*, No. A-4801-18, 2021 WL 4898501, at *5 (N.J. Super. Ct. App. Div. Oct. 21, 2021); *Cioffi v. City of Jersey City*, No. A-0660-10, 2011 WL 4916375, at *3 (N.J. Super. Ct. App. Div. Oct. 18, 2011). Accordingly, each of the claims set forth in the Complaint are subject to New Jersey's six-year statute of limitations for contract-related claims. *See* N.J. Stat. Ann. § 2A:14-1.

### A. <u>The Complaint was Filed More than Six Years After the Alleged Breach</u>

"Generally under New Jersey law, a cause of action arising from a breach of contract accrues when the defendant breached the contract." *Peck v. Donovan*, 565 F. App'x 66, 69 (3d Cir. 2012) (citing *Sodora v. Sodora*, 768 A.2d 840, 842 (N.J. Super. Ct. Ch. Div. 2000)); *see also Metromedia Co. v. Hartz Mountain Assocs.*, 655 A.2d 1379, 1381 (N.J. 1995) (explaining a breach of contract claim accrues when a party has an enforceable right). Similarly, in a "quasi-contract for unjust enrichment New Jersey courts employ a 'last rendition of services' test . . . to determine claim accrual." *Blystra v. Fiber Tech Grp., Inc.*, 407 F. Supp. 2d 636, 644 n.11 (D.N.J. 2005) (citing *Baer v. Chase*, 392 F.3d 609, 622 (3d Cir. 2004)). Therefore, the claim accrued on "the last date upon which" Seton Hall "rendered . . . services" to Orgera. *See Peck v. Donovan*, No. 07-5500, 2009 WL 900068, at *5 (D.N.J. Mar. 31, 2009).

Here, Orgera's Complaint alleges that the breach occurred no later than March 6, 2019, when Seton Hall notified Orgera that he had been withdrawn from the Law School. (*See* Compl. ¶ 31). Orgera's withdrawal from the Law School is the

underlying conduct for each of his causes of action. (*See generally* Compl.). As such, Orgera's causes of action accrued on March 6, 2019, and the statute of limitations expired on March 6, 2025. However, Orgeradid not file his Complaint until July 23, 2026, more than one year after the limitations period expired. (*See* ECF No. 1). Accordingly, all the claims are time-barred and must be dismissed.

**B. <u>Neither the Discovery Rule Nor Equitable Estoppel can Toll the Statute of Limitations</u>**

To avoid dismissal of his untimely claims, Orgera argues the discovery rule and equitable estoppel bar the application of the statute of limitations. (*See* Compl. ¶¶ 52-53). However, as set forth in greater detail below, neither of these tolling doctrines can save Orgera's untimely Complaint form dismissal as a matter of law.

**i. The Discovery Rule is Inapplicable**

"The discovery rule provides that 'in an appropriate case, a cause of action will be held not to accrue until the injured party discovers, or by exercise of reasonable diligence and intelligence should have discovered, that he may have a basis for an actionable claim.'" *Freeman v. State*, 788 A.2d 867, 878 (N.J. Super. Ct. App. Div. 2002) (quoting *Lopez v. Swyer*, 300 A.2d 563, 565 (N.J. 1973)). "The relevant inquiry is not when plaintiff subjectively came to believe that another is responsible for the injury but rather when he knows or should have known of facts which establish that an injury has occurred and that the fault can be attributed to another." *Kant v. Seton Hall Univ.*, No. 00-5204, 2009 WL 872226, at *2 (D.N.J.

Mar. 30, 2009), *aff'd*, 422 F. App'x 186 (3d Cir. 2011) (citing *Baer v. Chase*, 392 F.3d 609, 620 (3d Cir. 2004)).

However, "most contract actions rely upon the principal that the parties to the agreement know the terms of their contract and can detect a breach with reasonable diligence." *Nix v. Option One Mortg. Corp.*, No. 05-3685, 2006 WL 166451, at *11 (D.N.J. Jan. 19, 2006) (citing *County of Morris v. Fauver*, 707 A.2d 958, 972 (N.J. 1998)). As such, "[b]ecause the discovery rule imposes on plaintiffs an informative duty to use reasonable diligence to investigate a potential cause of action, and thus bars from recovery plaintiffs who had 'reason to know' of their injuries, the discovery rule generally does not apply to contract actions." *County of Morris*, 707 A.2d at 972. Since the allegations in the Complaint are rooted in Seton Hall's alleged violations of its contractual obligations, the discovery rule is inapplicable.

Notwithstanding, if the Court decides to consider whether the discovery rule applies, to the extent Orgera contends he did not personally receive the March 6, 2019 letter because it was directed to his criminal defense attorney, (*see* Compl. at ¶ 32), that allegation does not modify the limitations analysis. Orgera admits he became aware of Seton Hall's withdrawal decision, challenged the decision for months after his release from prison, and therefore possessed actual knowledge of the decision that is the basis of each of his claims. (*See id.* at ¶¶ 34-35, 38-39). Further, the December 14, 2020 letter denying Orgera's readmission into Seton Hall

explicitly references the March 6, 2019 letter. (*See* Compl, Ex. D. at pg. 1). However, Orgera waited until July 23, 2026 – over seven years after Seton Hall informed him that he was withdrawn from the Law School – to initiate this action. (*See* ECF No. 1). Accordingly, each of Orgera's claims are time-barred because they were not filed within the six-year statute of limitations.

Further, the Complaint demonstrates that Orgera was aware of Seton Hall's Law School's two-year leave policy, (Compl. ¶¶ 15-20), last attended Seton Hall in February 2017, (Compl. ¶ 15), and then failed to inquire personally as to his status as a student even though he was no longer incarcerated as of August 2020 (Compl. ¶ 34).

The Complaint reflects Orgera was aware of the withdrawal from the Law School, its effective date, and even attempted to appeal it, culminating in February 2021. (Compl. ¶ 39).

**ii. The Equitable Tolling Doctrine is Inapplicable**

Likewise, Orgera's claims cannot be saved by applying the equitable tolling doctrine. New Jersey recognizes equitable tolling in three narrow circumstances: (1) where the plaintiff "has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass"; (2) where the plaintiff "in some extraordinary way" has been prevented from asserting his rights; and (3) where the plaintiff "timely asserted his rights mistakenly by either defective pleading or in the

wrong forum." *Freeman*, 788 A.2d at 879-80. "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." *Id.* (citing *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998)). "Plaintiffs have a duty to ***diligently*** pursue their claims. Equitable tolling, which 'affords relief from inflexible, harsh or unfair application of a statute of limitations,' does not excuse claimants from exercising the reasonable insight and diligence required to pursue their claims." *Freeman*, 788 A.2d at 880 (emphasis added) (quoting *Villabos v. Fava*, 775 A.2d 700, 708 (N.J. Super. Ct. App. Div. 2001)).

Orgera does not point to any case law supporting his argument that the statute of limitations should be equitably tolled because Seton Hall mailed the March 6, 2019 letter to Orgera's criminal defense attorney during Orgera's incarceration. Rather, the public docket for Orgera's New Jersey criminal action reveals Orgera's attorney did not change from the attorney that was provided the communication of his withdrawal until May 6, 2023. (*See* Papalia Cert., Ex. B).[2] Again, Orgera waited until July 23, 2026, to file his complaint, ignoring the six-year statute of limitations.

---

[2] In resolving the Motion, the Court may consider the public docket from Orgera's criminal proceeding because it constitutes a matter of public record. *See Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007); *cf Pension Ben. Guar.*, 998 F.2d at 1196.

Even giving Orgera the benefit of the doubt, Orgera would have received information regarding the withdrawal shortly after the mailing of the March 6, 2019 letter – any claim would have expired in March 2025.

Critically, Orgera fails to allege how he has been "tricked" or "induced" by Seton Hall and does not allege how Seton Hall prevented him from timely filing his Complaint. *See Freeman*, 788 A.2d at 879-80. It is significant to note that even after receipt of the letter and subsequent exhaustion of appeal remedies within the Law School, Orgera still waited ***another*** five years to file his Complaint. "Even in fraud cases, the authorities require a plaintiff to be diligent because a plaintiff cannot defer the running of the statute by sleeping on his rights or by his own negligence." *Kyle v. Green Acres at Verona, Inc.*, 207 A.2d 513, 520 (N.J. 1965).

Further, the mere fact that Orgera was incarcerated when the March 6, 2019 letter was sent to his criminal defense attorney does not alter the analysis. Rather, Orgera's own allegations demonstrate he maintained his legal studies while he was incarcerated by reading "countless law review articles, judicial opinions, and law books" and also filed legal motions. (*See* Compl. ¶ 29). Therefore, Orgera's incarceration does not constitute "extraordinary circumstances" that demand equitable tolling of the statute of limitations as he was released as of August 2020. *See Freeman v. State*, 788 A.2d 867, 880 (N.J. Super. Ct. App. Div. 2002) (rejecting argument that plaintiffs were prevented from filing action due to incarceration where

they failed to "offer any explanation as to how or who prevented them from exercising their right to file suit").

Thus, Orgera's entire Complaint fails to state any cognizable claims because they all are based in a contract, and as such, these claims are expired and must be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6).

## II. THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO SET FORTH ANY PLAUSIBLE CLAIMS.

Even assuming *arguendo* that Orgera's claims are not time-barred, which they are, the Complaint should still be dismissed because the Complaint fails to plead any plausible causes of action. The Complaint raises four causes of action: (i) breach of contract (Count I), (ii) promissory estoppel (Count II), (iii) breach of the implied covenant of good faith and fair dealing (Count III), and (iv) unjust enrichment (Count IV). (*See generally* Compl.). However, not a single Count is supported by the allegations in the Complaint or by the exhibits Orgera attaches to his Complaint.

Therefore, the Complaint should be dismissed with prejudice because it fails to state any claim for which relief can be granted.

### A. The Complaint Fails to State a Claim for Breach of Contract (Count I)

Count I of the Complaint fails as a matter of law because it fails to plead the elements of a breach of contract claim. The Complaint fails to allege the elements of a contract: offer, acceptance, and consideration. It also fails because the

Complaint fails to allege that either communicator had authority to bind the parties in this matter. Finally, to the extent any contract is discerned, Seton Hall's performance would be excused because the conditions precedent did not occur and the contract is unenforceable as it violates public policy.

For the reasons set forth below, Orgera has failed to state a claim for breach of contract under Count I, which should be dismissed with prejudice.

**i. *The Complaint Fails to Allege the Basic Elements of a Contract***

"To prevail on a breach of contract claim, a party must prove a valid contract between the parties, the opposing party's failure to perform a defined obligation under the contract, and the breach caused the claimant to sustained*[sic]* damages." *EnviroFinance Grp., LLC v. Envt'l Barrier Co., LLC*, 113 A.3d 775, 787 (N.J. Super. Ct. App. Div. 2015); *see also Murphy v. Implicito*, 920 A.2d 678, 689-90 (N.J. Super. Ct. App. Div. 2007) (requiring existence of contract, failure of other party to perform its contractual obligations, and damages flowing from breach). To establish a breach, a plaintiff must show that the defendant "did not do what the contract required [him] to do." *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016) (quoting Model Jury Charge (Civil), § 4.10A "The Contract Claim -- Generally (May 1998)).

It is well-settled that to state a claim for breach of contract under New Jersey law, a party must allege, among other things, that "the parties entered into a

contract." *Pollack v. Quick Quality Rests., Inc.*, 172 A.3d 568, 576 (N.J. Super. Ct. App. Div. 2017) (citing *Globe Motor Co. v. Igdalev*, 139 A.3d at 64); *see also Comly v. First Camden Nat'l Bank & Trust Co.*, 36 A.2d 591, 593 (N.J. Sup. Ct. 1944) ("However, it may be said that as a general rule an action on a contract cannot be maintained against a person who is not a party to it."). Further, to establish that a valid contract exists, both parties must assent to the terms of the agreement. *See Cohn v. Fisher*, 287 A.2d 222, 224 (N.J. Super. Ct. App. Div. 1972) ("The essentials of a valid contract are: mutual assent, consideration, legality of object, capacity of the parties and formality of memorialization.").

"To prevail on a claim of breach of contract, a party must show that a contract has been made, with an offer, acceptance, and consideration all present, and that the moving party has performed or is excused from performing." *Goldfarb v. Solimine*, 245 A.3d 570, 578 (N.J. 2021). "'[T]he basic features of a contract'" are "'offer, acceptance, consideration, and performance by both parties.'" *Id.* at 577 (quoting *Shelton v. Restaurant.com, Inc.*, 70 A.3d 544, 556 (N.J. 2013)). Orgera fails to allege all four, and therefore, his claim fails as a matter of law.

Here, Orgera alleges that before he was convicted of two felonies, the Associate Dean made two promises to his mother that there would be no academic barrier to Orgera returning to the Law School after his incarceration (the "March 2017 Email") and that Seton Hall would waive application of ABA Standard 311(b)

(the "stale-credit rule") to him (the "June 2017 Email"). (*See* Compl. ¶¶ 15-20). Orgera alleges that the March 2017 Email included conditions that were "satisfied". (*See* Compl. ¶¶ 21-24). However, at no point does Orgera allege that his mother ever accepted these promises or that there was ever any consideration (other than previously paid tuition). Orgera also fails to allege that his mother had authority to make a contract on his behalf and fails to address that the Associate Dean had authority to enter into a contract on behalf of Seton Hall, which is contrary to the Law School's policies. Finally, Orgera fails to address the fact that the alleged contract would be unenforceable because it violates the accreditor's rule.

As demonstrated here, the Complaint fails to allege facts to sustain any of the elements of a contract. As such, Count I should be dismissed with prejudice.

**a. Predictions and hypothetical, indefinite statements are not offers.**

Illusory promises are not enforceable offers. New Jersey courts define an illusory promise as, a "promise which by [its] terms make[s] performance entirely optional with the promisor whatever may happen, or whatever course of conduct in other respects he may pursue." *Del Sontro v. Cendant Corp., Inc.*, 223 F. Supp. 2d 563, 577-78 (D.N.J. 2002) (quoting *Curtis Elevator Co. v. Hampshire House, Inc.*, 362 A.2d 73, 76 (N.J. Super. Ct. Law Div. 1976)).

Here, the March 2017 Email consisted of the Associate Dean stating: "*assuming* that either the charges are dropped or that he is exonerated there will be

no problem with him returning to school." (*See* Compl., Ex. B). It also includes a response to the question, "Will [Orgera] be able to back to school after the leave of absence?", with predictions:

> I am sorry but *I can't answer that* at the moment. Academically there *should* not be a problem. *Depending on* what happens with the charges, our student code of conduct and other policies *may require* that an investigation be done and certain procedures are followed before it is determined that he can return.

*Id.* (emphasis added).

The June 2017 Email consisted of the Associate Dean responding to an email that is not provided by Orgera, in which the Associate Dean states that the "stale credit" rule will not be applied. (*See* Compl., Ex. C). Notably, it states nothing about Seton Hall not enforcing its academic policies, including the requirement that leaves of absence not exceed two (2) years or they will be automatically withdrawn from the Law School. Of further importance, the subsequent email from Orgera's mother indicates that a trial did not even occur yet for Orgera and therefore, it is unclear still whether the charges were dropped or if Orgera was exonerated. (*See id.*).

These alleged "promises" by the Associate Dean are entirely illusory. There was no unconditional promise that Seton Hall's policies would not be applied but, rather, it was expressed that Seton Hall's policies might not be applicable depending on what happened with Orgera's criminal case. The Associate Dean not only spoke

in hypotheticals and offered predictions, but she also even went so far as to state that she could not answer the question asked of her. There is nothing definite about the statements made by the Associate Dean in the emails. Thus, there is no offer.

**b. Academic policies are not promises.**

In New Jersey, student-university relationships "cannot be described either in pure contractual or associational terms." *Napolitano v. Trs. of Princeton Univ.*, 453 A.2d 263, 272 (N.J. Super. Ct. App. Div. 1982). Courts recognize "the necessity for independence of a university in dealing with the academic failures, transgressions or problems of a student." *Mittra v. Univ. of Med. & Dentistry of New Jersey*, 719 A.2d 693, 696-97 (N.J. Super. Ct. App. Div. 1998). Rigid application of contract principles "would tend to intrude upon academic freedom" because a school "is surely the best judge of its student's academic performance." *Id.* "[A] private religious university's values and mission must be left to the discretion of the university. *Romeo v. Seton Hall Univ.*, 875 A.2d 1043, 1050 (N.J. Super. Ct. App. Div. 2005). Consistent with this, New Jersey courts "have consistently declined to find the existence of an express contractual promise based on isolated provisions in a student manual." *Kostic v. Seton Hall Univ.*, No. 20-5566, 2021 WL 9667962, at *3 (D.N.J. May 27, 2021). Rather, courts consider breach of contract claims based on student manuals under a quasi-contract theory wherein the operative inquiry is whether the university acted "in good faith" and dealt "fairly with its students." *Id.*

Here, however, the Complaint does not pursue or set forth any allegations to support this sort of claim. Instead, Orgera complains that Seton Hall followed its policies and rules. (*See* Compl. ¶¶ 56, 60). Orgera admits he knew of Seton Hall's policies (Compl. ¶¶ 15-20) and even goes on to admit that Seton Hall had discretion and choices in implementing its policies. (*See* Compl. ¶ 43). Orgera indeed pursues other quasi-contract claims instead, which separately fail for the reasons set forth below. Therefore, the policies themselves cannot establish a contract.

**c. There was never any acceptance of any purported offer.**

A contract "arises from offer and acceptance, and must be sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty." *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992). "It is requisite that there be an unqualified acceptance to conclude the manifestation of assent." *Id.* (quoting *Johnson & Johnson v. Charmley Drug Co.*, 95 A.2d 391, 397 (N.J. 1953)). "An offeree may manifest assent to the terms of an offer through words, creating an express contract, or by conduct, creating a contract implied-in-fact." *Id.*

Nowhere does the Complaint ever allege anyone ever accepted the purported offers by the Associate Dean. That is because the Associate Dean never made an offer to be accepted for the reasons set forth above. Nonetheless, not once does Orgera allege that Orgera accepted the alleged promises set forth in the March 2017

Email or the June 2017 Email. Orgera fails to even allege that his mother (the recipient of the emails) ever accepted the purported promises. Nor was there any sort of conduct alleged by Orgera that could have manifested consent. Without acceptance, there is no contract.

**d. Tuition is insufficient consideration.**

"Consideration is 'a bargained-for exchange of promises or performance that may consist of an act, a forbearance, or the creation, modification, or destruction of a legal relation.'" *Sipko v. Koger, Inc.*, 70 A.3d 512, 521 (N.J. 2013). Further, it has long been established that "past consideration is no valid consideration." *Broad St. Nat. Bank of Trenton v. Collier*, 169 A. 552, 554 (N.J. 1933). Here, there is zero consideration – there is not a single allegation that Orgera and Seton Hall bargained for any sort of exchange of consideration for the alleged contract Orgera claims occurred in 2017. Instead, the Complaint seeks to rely on alleged payments of tuition from somewhere around 2013-2016. (*See* Compl. ¶¶ 8-9, 55). Orgera admits that, in exchange for that tuition, he was enrolled in and completed sixty-seven credits. (Compl. ¶ 55). Therefore, this is past consideration for a different type of agreement that was already fulfilled. Without any consideration, there cannot be a valid contract and as such, Count I of the Complaint should be dismissed with prejudice.

**e. In the alternative, Seton Hall was excused from performance.**

A condition precedent is "a fact or event occurring subsequently to the making of a valid contract and which must exist or occur before there is a right to immediate performance, before there is a breach of contract duty or before the usual judicial remedies are available." *Watson v. City of Salem*, 934 F. Supp. 643, 660 (D.N.J. 1995). Here, no valid contract was formed, and even if a valid contract did exist, whether Orgera was charged, prompting an investigation was a hypothetical presented to explain circumstances where Orgera would not remain a student – not a condition precedent to a promise to disregard the ABA's rules for his benefit.

Even assuming arguendo that the alleged contract is valid, which it is not, Seton Hall's performance would be excused according to the Complaint. Orgera admits that Seton Hall's performance was conditioned on Orgera's charges being dropped or his exoneration. (Compl. ¶¶ 15-20). This did not occur contrary to Orgera's incorrect legal conclusion. (Compl. ¶ 22). Instead, Orgera was convicted and sentenced for two felonies and spent nearly four years incarcerated. (Compl. ¶ 21). While Orgera claims the promise to not apply the stale-credit rule was not conditional, that promise had nothing to do with Seton Hall's policy to automatically withdraw students who have a leave of absence exceeding two (2) years.

As such, Seton Hall had no obligation to perform under the alleged contract, and no obligation to discontinue the withdrawal of Orgera; therefore, Orgera fails to

state his contract claims for this reason as well. Accordingly, Orgera has failed to allege that a valid contract exists, and his contract claims must therefore be dismissed with prejudice under Rule 12(b)(6).

**ii. *Plaintiff Fails to Sufficiently Allege That Either Individual Possessed the Legal Authority to Bind the Parties***

An agent "may only bind his principal for such acts that are within his actual or apparent authority." *New Jersey Lawyers' Fund for Client Prot. v. Stewart Title Guar. Co.*, 1 A.3d 632, 639 (N.J. 2010). Actual authority exists where the agent "reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Id.* Apparent authority requires: "(1) that the appearance of authority has been created by the conduct of the alleged principal and it cannot be established alone and solely by proof of [conduct by] the supposed agent; (2) that a third party has relied on the agent's apparent authority to act for a principal; and (3) that the reliance was reasonable under the circumstances." *Checchio v. Evermore Fitness, LLC*, 271 A.3d 829, 833 (N.J. Super. Ct. App. Div. 2022). Indeed, for a non-minor child, there needs to be some power of attorney or some legal guardianship in order to act on behalf of a parent's grown child. *See Weed v. Sky NJ, LLC*, No. A-4589-16, 2018 WL 1004206, at *3 (N.J. Super. Ct. App. Div. Feb. 22, 2018).

Here, the Complaint alleges that Orgera's mother entered into a contract with the Associate Dean on his behalf via emails. (*See* Compl. ¶¶ 15-20). Orgera does

not allege that his mother had power of attorney to enter into the contract on his behalf. Orgera does not allege that his mother had any legal guardianship over him. Therefore, Orgera's mother lacked actual authority to act as Orgera was an adult and Orgera's mother lacked power of attorney.

The Complaint fails to allege that Orgera's own conduct ever created an appearance of authority – nor could he since he was incarcerated and never spoke to Seton Hall personally during his period of incarceration. It would be highly unreasonable for the Associate Dean to believe that she was entering into a contract on behalf of Seton Hall with Orgera (a grown adult and law student) through mere email communications with his mother. Therefore, Orgera's mother lacked apparent authority to act as Orgera. In sum, Orgera's mother did not have any authority to bind Orgera.

Furthermore, the Associate Dean lacked the institutional authority to bind Seton Hall. Seton Hall's policies and procedures, which are publicly available on its website, and referenced by Orgera in his Complaint, explicitly prohibit employees such as the Associate Dean from entering into contracts on behalf of Seton Hall and provide that any agreement consummated outside these guidelines *shall not be recognized* by Seton Hall. Orgera also fails to allege that the Associate Dean possessed apparent authority, and it would be highly unreasonable for Orgera's

mother to believe her email communications with the Associate Dean could form a binding contract between her son and Seton Hall.

As such, Orgera further fails to state a cognizable contract claim because he fails to allege that either individual possessed legal authority to bind the respective parties.

**iii. *The Alleged Contract Violates Public Policy***

The alleged contract is also void as it is detrimental to the common good. "A void contract is '[a] contract that is of no legal effect, so that there is really no contract in existence at all. A contract may be void because it is technically defective, contrary to public policy, or illegal.'" *Sun Life Assurance Co. of CanABA v. Wells Fargo Bank, N.A.*, 208 A.3d 839, 857 (N.J. 2019) (quoting *D'Agostino v. Maldonado*, 78 A.3d 527, 543 n.4 (N.J. 2013)); *see also Vasquez v. Glassboro Serv. Ass'n, Inc.*, 415 A.2d 1156, 1162 (N.J. 1980) ("No contract can be sustained if it is inconsistent with the public interest or detrimental to the common good.").

The stale-credit rule required students at ABA accredited law schools to complete their Juris Doctor program no later than seven years after commencing study. *See* ABA *Standards and Rules of Procedure for Approval of Law Schools*, std. 311(b) (2014-2015). (Compl., Ex. D). At the time of Orgera's arrest, it had been three and a half years since he started at Seton Hall. (*See* Compl. ¶¶ 8, 11). When Orgera applied for readmission to Seton Hall's Law School, it had been more than

seven years since he initially started at the Law School. (Compl. ¶¶ 8, 34). Therefore, the ABA required Seton Hall to apply the stale-credit rule unless it found extraordinary circumstances. ABA std. 311(b). ABA Standard std. 311(b) (effective August 2014–February 2024).

Orgera alleges that Seton Hall made a contract in which it promised not to apply the stale-credit rule. (*See* Compl. ¶¶ 15-20). However, this alleged contract would have forced Seton Hall to violate the ABA's rules and risk impacting its accreditation status with the ABA. Even if this Court were to determine that the Associate Dean did enter into a contract with Orgera (which she did not for the reasons set forth above) to not apply the stale-credit rule to Orgera, this Court could not enforce such a contract and require Seton Hall to abide by it because it could impact Seton Hall's accreditation status. Such impact is not just a detriment to Seton Hall but could limit its students' ability to sit for the bar exam and find employment. For these reasons, the alleged contract is void for public policy reasons and Orgera fails to satisfy the requisite elements of his contract claims on these grounds as well.

### B. The Complaint Fails to State a Claim for Promissory Estoppel (Count II)

Like his contract claims, Orgera's promissory estoppel claim is not plausible on its face because it fails to allege any facts to sufficiently plead the elements of the claim.

To prevail on a claim for promissory estoppel, the plaintiff must show: "'(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment.'" *Goldfarb*, 245 A.3d at 577 (quoting *Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington*, 944 A.2d 1, 19 (N.J. 2008)). "Promissory estoppel is a quasi-contract theory and cannot be maintained where a valid contract fully defines the parties' respective rights and obligations." *County of Essex v. Aetna Inc.*, No. 17-13663, 2018 WL 6584920, at *6 (D.N.J. Dec. 13, 2018). "Although a party may plead in the alternative, *claims cannot proceed on quasi-contract theories absent a claim that the contract is invalid*." *Id.* (citing *Hillsborough Rare Coins, LLC v. ADT LLC*, No. 16-916, 2017 WL 1731695, at *7 (D.N.J. May 2, 2017)); *see also C. B. Snyder Realty Co. v. Nat'l Newark & Essex Banking Co. of Newark*, 101 A.2d 544, 553 (N.J. 1953).

As demonstrated below, the Complaint fails to allege facts sufficient to sustain any of the elements of promissory estoppel, and as such, Count II should be dismissed with prejudice.

#### i. *Plaintiff Fails to Allege a Plausible Clear and Definite Promise*

"'Under New Jersey law, the sine que non of a promissory estoppel claim is a clear and definite promise.'" *Scagnelli v. Schiavone*, 538 F. App'x 192, 194 (3d Cir. 2013) (quoting *Ross v. Celtron Int'l, Inc.*, 494 F. Supp. 2d 288, 296 (D.N.J. 2007)).

"Indefinite promises or promises subject to change by the promisor are not clear and definite and cannot give rise to a claim for promissory estoppel." *Del Sontro*, 223 F. Supp. 2d 563,at 574).

Orgera alleges that, prior to his conviction and more than three years before his release from prison, the Associate Dean made two "written promises" that satisfy the clear and definite promise requirement. (Compl. ¶¶ 15, 19, 64). However, the Complaint is devoid of any factual allegations to support the conclusory assertion that either of these alleged communications by the Associate Dean constitute a "clear and definite promise" required to sustain a promissory estoppel claim. *See Goldfarb*, 245 A.3d at 577.

With respect to the March 2017 Email, the Associate Dean predicted: "*assuming* that either the charges are dropped or that he is exonerated there *will be* no problem with him returning to school." (*See* Compl., Ex. B) (emphasis added). It also includes, the Associate Dean responding to the question, "Will [Orgera] be able to back to school after the leave of absence?", with

> I am sorry but *I can't answer that* at the moment. Academically there *should* not be a problem. *Depending on* what happens with the charges, our student code of conduct and other policies *may require* that an investigation be done and certain procedures are followed before it is determined that he can return.

*Id.* (emphasis added). The March 2017 Email was not an explicit guarantee that Orgera would be able to return to the Law School and complete his degree. Rather,

the March 2017 Email reflects the Associate Dean's understanding of Orgera's circumstances, provided by Orgera's mother, as of March 2017, and expressly states his ability to return is premised on either the dismissal of the criminal charges or Orgera's exoneration. *See id.* That is, the March 2017 Email reflects a statement dependent on certain future circumstances occurring, which ultimately never came to fruition as Orgera ultimately pled guilty to two counts of second-degree endangering—abuse/neglect of a child by person with legal duty to care, in violation of N.J. Stat. Ann. § 2C:24-4(a)(2). (*See* Compl., Ex. I).

Likewise, the June 2017 Email does not reflect a "clear and definite promise." The June 2017 Email consists of the Associate Dean responding to an email that is not provided by Orgera, in which the Associate Dean states that the "stale credit" rule will not be applied. (*See* Compl., Ex. C). Notably, however, the June 2017 Email does not contain any promise that Seton Hall would not apply its academic policies, including the requirement that leaves of absence not exceed two (2) years or they will be automatically withdrawn from the Law School. Additionally, the June 2017 Email is devoid of any promise that Seton Hall would permit him to complete his studies at the Law School regardless of any future events. Rather, the June 2017 Email reflects the contingent nature of the parties' discussions. The subsequent email from Orgera's mother indicates that, by July 27, 2017, a trial had not even occurred yet. (*See id.*). Therefore, neither the March 2017 Email nor the

June 2017 Email constitute clear and definite promises. *See Aircraft Inv. Corp. v. Falcon Jet Corp.*, 18 F. Supp. 2d 409, 416 (D.N.J. 1998) (finding a promise subject to "contingencies and conditions" could not be a "clear and definite promise"); *Watson*, 934 F. Supp. at 661 (dismissing promissory estoppel claim where "the promise made to Plaintiff was clearly conditional and contingent, as opposed to clear and definite").

As such, Orgera fails to state a cognizable promissory estoppel claim because he fails to allege a plausible clear and definite promise.

**ii. *Plaintiff Fails to Allege That the Associate Dean Made the Alleged Promise With the Expectation That Plaintiff Would Rely On It***

Further, promissory estoppel requires that the promise be "'made with the expectation that the promisee will rely on it.'" *Goldfarb*, 245 A.3d at 577 (quoting *Toll Bros.*, 944 A.2d at 19). While Orgera conclusively alleges that Seton Hall "would reasonably expect" him to rely upon the March 2017 and July 2017 Emails to his mother, this is not supported by the factual allegations set forth in the Complaint. Rather, as discussed above, neither the March 2017 Email nor the June 2017 Email constitute a clear and definite promise because they are premised on future contingencies. Rather, each of these emails were informational in nature and premised on the information before the Associate Dean at the time. Therefore, the March 2017 and July 2017 Emails do not reflect a promise made by the Associate

Dean to Orgera's mother, that she expected Orgera to rely upon. As such, Orgera fails to state a plausible promissory estoppel claim because he fails to allege that any promises were made with the expectation that Orgera would rely on it.

**iii.** ***Plaintiff Fails to Allege That He Reasonably Relied on the Alleged Promise***

Orgera's promissory estoppel claim also fails because he has not plausibly alleged reasonable reliance. As the Third Circuit has held, the "reliance upon a mere expression of future intention cannot be 'reasonable,' because such expressions do not constitute a sufficiently definite promise." *In re Phillips Petroleum Sec. Litig.*, 881 F.2d 1236, 1250 (3d Cir. 1989) (quoting *Santoni v. Fed. Deposit Ins. Corp.*, 677 F.2d 174, 179 (1st Cir. 1982)).

According to the Complaint, the Associate Dean's alleged promises to Orgera's mother were made in March and June 2017 – before Orgera was convicted and sentenced, and more than three years before he was ultimately released from prison. (Compl. ¶¶ 16-20). Nevertheless, Orgera alleges that while he was incarcerated for nearly four years, he relied on email communications between the Associate Dean and his mother that occurred shortly after his arrest stating that the stale-credit rule would not be applied, and he could return to school if his charges were dropped or he was exonerated. (Compl. ¶¶ 63-69). Orgera's reliance is entirely unreasonable.

First, the March 2017 Email clearly indicates the Associate Dean's contention that there would "be a problem with Plaintiff returning to school was premised on "either the charges [being] dropped or that [Orgera] is exonerated." (*See* Compl., Ex. B). While Orgera claims the charges were "dropped" and he was "exonerated", the documentary evidence attached to his Complaint reveals otherwise. (*See* Compl. ¶ 23). The Complaint clearly reflects the charges were not dropped nor was Orgera exonerated; rather, Orgera ultimately pled guilty to two counts of second-degree endangering—abuse/neglect of a child by person with legal duty to care, in violation of N.J. Stat. Ann. § 2C:24-4(a)(2). (*See* Compl., Ex. I). As such, it was not reasonable for Orgera to expect he would be able to complete his studies at Seton Hall.

Second, the June 2017 Email addressed the application of the ABA's stale-credit rule. (*See* Compl., Ex. C.). The June 2017 Email does not state that Seton Hall would not apply its own academic policies, including the requirement that leaves of absence not exceed two (2) years or they will be automatically withdrawn from the Law School. It would not be reasonable to expect a single statement by the Associate Dean in 2017 to guarantee Seton Hall would not ultimately apply its academic policies in determining Orgera could not return to the Law School.

As such, Orgera fails to state a plausible promissory estoppel claim because he has not set forth sufficient allegations of his reasonable reliance on any promises made to him.

### iv. *Plaintiff Fails to Allege Definite and Substantial Detriment*

Finally, Orgera fails to allege any definite and substantial detriment. Promissory estoppel requires a showing of a "definite and substantial detriment." *Goldfarb*, 245 A.3d at 577 (quoting *Toll Bros.*, 944 A.2d at 19). In the Complaint, Orgera cites several purported detriments, but none satisfy the requisite standard.

First, Orgera alleges "he engaged in concrete preparatory actions: daily study of legal materials, bar examination preparation, and earning a paralegal certificate", which "represent opportunity cost" since he could have "pursue[ed] alternative vocational training or educational programs available to incarcerated individuals." (*See* Compl. ¶ 66). Notably, Orgera's allegations foreclose any plausible claim that he suffered a definite and substantial detriment because he was unable to continue his legal studies while incarcerated. Rather, when Orgera was released from prison, he subsequently enrolled as a first-year law student at another law school (due to every ABA-accredited law school's enforcement of the stale-credit rule) and ultimately graduated with his Juris Doctor, ranking fifteenth out of 288 students and subsequently earned a Masters of Law the following year, ranking third out of 214 students. (Compl. ¶ 48). Therefore, the Complaint does not plausibly allege that

Orgera's decision to study law while incarcerated left him in a worse position. If anything, to the extent the Court finds Orgera adequately alleges that Seton Hall made any promises to him, any such promises benefited Orgera by providing motivation to continue his studies while incarcerated.

Orgera also alleges that he could have contacted other law schools about transferring if he knew he could not return to Seton Hall. (*See* Compl. ¶ 67). However, the Complaint does not set forth any cognizable allegations that Orgera could have enrolled or attended another law school during his incarceration.

Finally, Orgera claims that he had to retake the Law School Admission Test ("LSAT"), incur tuition at a new law school, lost "years of potential earnings" and "suffer[ed] diminished career prospects and lifetime earnings by graduating from an unranked school rather than Seton Hall Law School." (Compl. ¶ 69). However, none of these are cognizable injuries. "'[I]n the absence of 'egregious' circumstances, courts have consistently rejected promissory estoppel claims when the alleged injuries consisted of lost profits, lost fees, [or] forgone business opportunities.'" *Cryopak Inc. v. Freshly LLC*, No. 23-18896, 2024 WL 4986818, at *10 (D.N.J. Dec. 5, 2024) (quoting *Wolet Cap. Corp. v. Walmart Inc.*, No. 18-12380, 2021 WL 242297, at *42 (S.D.N.Y. Jan. 25, 2021)); *cf. Schwartz v. Menas*, 279 A.23d 436, 447 (N.J. 2022) (explaining "'[l]ost profits may be recoverable if they can be established with a 'reasonable degree of certainty, but [a]nticipated profits

that are remote, uncertain or speculative . . . are not recoverable.'" (quoting *Passaic Valley Sewerage Comm'rs v. St. Paul Fire & Marine Ins. Co.*, 21 A.3d 1151, 1158 (N.J. 2011))). Here, there are no egregious circumstances stemming from Seton Hall's actions. Rather, Orgera's own actions – namely his criminal convictions and incarceration (*see* Compl., Ex. I) – led to his inability to complete his Juris Doctor at Seton Hall and subsequent decision to restart the journey to becoming a lawyer. Accordingly, Orgera has not plausibly alleged that he suffered any definite and substantial detriment.

Therefore, Orgera fails to allege a cognizable claim for promissory estoppel, and Count II must be dismissed with prejudice under Rule 12(b)(6).

### C. <u>The Complaint Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count III)</u>

The Complaint fails to allege a breach of the implied covenant of good faith and fair dealing because the Complaint fails to allege a contract and to the extent it does, Orgera premises his breach of the implied covenant on the same conduct as he premises his breach of contract claim.

A covenant of good faith and fair dealing is implied in every New Jersey contract, which provides that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 396 (N.J. 2005); *Sons of Thunder v. Borden, Inc.*, 690 A.2d 575, 587

(N.J. 1996). That is, "[i]n the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing." *Noye v. Hoffmann-La Roche Inc.*, 570 A.2d 12, 14 (N.J. Super. Ct. App. Div. 1990).

Here, the Complaint fails to allege a valid contract exists between Seton Hall and Orgera as to his leave of absence and the stale-credit rule. *See*, *supra*, Point II.A. Therefore, without a valid contract, there cannot be any implied covenant of good faith and fair dealing.

Further, where the asserted breach of the covenant and the breach of an express term "basically rest on the same conduct," "there can be no separate breach of an implied covenant of good faith and fair dealing." *Wade v. Kessler Inst.*, 798 A.2d 1251, 1261-62 (N.J. 2002). The Third Circuit, applying New Jersey law, held that "[n]o claim for a breach of the covenant of good faith and fair dealing may lie . . . unless the underlying conduct is distinct from that alleged in a corresponding breach of contract claim," and affirmed dismissal of a covenant claim that was "identical to" the contract claim. *MZL Cap. Holdings, Inc v. TD Bank, N.A.*, 734 F. App'x 101, 105-06 (3d Cir. 2018). When the allegations under a breach of the implied covenant "do not 'differ[] from a 'literal violation'' of the Agreement in any respect, the implied-covenant claim must be dismissed." *Gap Props., LLC v. Cairo*, No. 19-20117, 2020 WL 7183509, at *5 (D.N.J. Sept. 17, 2020) (citing *Wade*, 798 A.2d at 1259). Finally, "the implied covenant is not meant to impose new

obligations upon the parties" – that is, obligations "not agreed to by the parties, which 'impermissibly contradict or expand the scope of the express terms of the contract.'" *Beaman v. Bank of Am.*, No. 21-2056, 2023 WL 4784254, at *16 (D.N.J. July 27, 2023) (citing *Eggiman v. Bank of America, N.A.*, No. 22-10298, 2023 WL 2647071, at *8 (D. Mass. Mar. 27, 2023); *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd.*, 213 F.3d 175, 184 (4th Cir. 2000)) (dismissing claims for breach of the implied covenant as duplicative of breach of contract claims where the implied covenant claims were "alleged as breaches of the parties' express contract").

Here, putting aside that there is no valid contract, Orgera's allegations are duplicative of the alleged breach of contract claim and seek to add new obligations to the alleged contract. Orgera alleges Seton Hall violated the implied covenant by "promising one thing and doing the precise opposite, sending notice to the wrong person, and denying procedures it had itself described as required." (Compl. ¶ 71). None of these can sustain Orgera's claim. "Promising to do one thing and doing the precise opposite" and "denying procedures" allege literal violations of Orgera's alleged contract. They raise the exact same conduct as that which was raised under Count I. (*See* Compl. ¶¶ 56-61). "Sending notice to the wrong person" is about the withdrawal from the Law School under a Law School policy, which nowhere in the Complaint is there any allegation of a notice provision. (*See* Compl. ¶ 73). That is, Orgera's alleged contract between him and Seton Hall fails to allege that there was

any required notice provision. Giving "proper notice" would be indeed a new obligation beyond those contemplated by the parties – if hypothetically there ever was a contract regarding withdrawals at the Law School. Therefore, none of the allegations can sustain a breach of the implied covenant of good faith and fair dealing. Count III should be dismissed with prejudice.

### D. **The Complaint Fails to State a Claim for Unjust Enrichment (Count IV)**

Finally, Orgera's unjust enrichment claim fails for two reasons. First, the claim is duplicative of his breach of contract claim. Orgera bases his unjust enrichment claim on the contention that he was promised a Juris Doctor from Seton Hall in exchange for his completion of the required credits and tuition payments. (*See* Compl. ¶¶ 80-81). This is the precise theory upon which the breach of contract claim is based. (*See id.* at ¶ 55 ("[Orgera] performed his obligations under the contract. He enrolled in the Juris Doctor program, paid the required tuition, and completed sixty-seven of the eighty-eight required credits in good academic standing before his incarceration.")). Although New Jersey law recognizes a plaintiff may plead unjust enrichment in the alternative, when the unjust enrichment claim duplicates the breach of contract claim, as it does here, the claim must be dismissed. *See Ribble Co. v. Burkert Fluid Control Sys.*, No. 15-6173, 2016 WL 6886869, at *5 (D.N.J. Nov. 22, 2016) (dismissing unjust enrichment claim "because it simply duplicates [a] breach of contract claim"); *Slimm v. Bank of Am. Corp.*, No. 12-5846,

2013 WL 1867035, at *22 (D.N.J. May 2, 2013) (recognizing that a court can dismiss a claim that is duplicative of other claims in the complaint).

Additionally, the Complaint fails to state a plausible unjust enrichment claim because Orgera does not adequately allege that Seton Hall unjustly retained the benefit of his tuition. "To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 554 (N.J. 1994) (citation modified). "The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of renumeration enriched defendant beyond its contractual rights." *Id.*

Here, Orgera does not plausibly allege that Seton Hall unjustly retained the benefit of his tuition. Orgera alleges that Seton Hall was unjustly enriched because it received the benefit of his tuition payments and retained those payments without issuing him a Juris Doctor. (Compl. ¶¶ 80-82). Here, Orgera, however, admits that Seton Hall provided services in the form of an education in exchange for the tuition payments. (*Id.*). Therefore, Orgera is effectively arguing that Seton Hall has been unjustly enriched because he is dissatisfied with the services he paid for because they did not result in a degree. If Orgera's logic could equate to unjust enrichment, then any student who drops out or transfers to another university would be entitled

to a full refund of their tuition payments because they did not graduate. This is not a cognizable theory of unjust enrichment. *See Kostic*, 2021 WL 9667962, at *4 (dismissing unjust enrichment claim because the tuition payments were "in exchange for credits earned" and the plaintiff continued to receive remote instruction during the Covid-19 pandemic).

Moreover, Orgera's failure to graduate from Seton Hall is his own doing. According to the Complaint, Orgera was "among the top tier in the class" and on track to graduate. (Compl. ¶ 12). However, he derailed his education when he was arrested and subsequently convicted for two felonies. (*See* Compl., Ex. I). Seton Hall was also prohibited from granting Orgera readmission as a third-year law student because of the ABA's stale-credit rule. Thus, Orgera's claim that Seton Hall's retention of his tuition payments is unjust is entirely without merit and unstainable as a matter of law. Seton Hall provided Orgera with the education he paid for and his failure to graduate with a degree from Seton Hall is due to his own actions.

Accordingly, Orgera fails to state a cognizable claim for unjust enrichment, and this count must be dismissed with prejudice under Rule 12(b)(6).

## CONCLUSION

For the reasons set forth above, Seton Hall respectfully requests this Court grant its motion to dismiss Orgera's Complaint entirely with prejudice as a matter of law, for a failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

/s/ Patrick Papalia

**ARCHER & GREINER, P.C.**
Patrick Papalia, Esq. (ID 015831993)
ppapalia@archerlaw.com
Ryan Paff, Esq. (ID 421962023)
rpaff@archerlaw.com
Court Plaza South – West Wing
21 Main Street, Suite 353
Hackensack, New Jersey 07601
201-342-6000
*Attorneys for Defendant*
*Seton Hall University*

Dated: September 29, 2026